UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SARO SPADARO,

                        Plaintiff,

-v-

UNITED STATES CUSTOMS AND
BORDER PROTECTION *et al.*,

                        Defendants.

No. 16-cv-16 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Plaintiff Saro Spadaro brings this action against several government agencies, seeking the disclosure of records pursuant to the Freedom of Information Act ("FOIA"). *See* 5 U.S.C. § 552. Now before the Court are the parties' renewed motions for summary judgment. (Doc. Nos. 95, 97.) For the reasons set forth below, the Court grants Defendants' renewed motion and denies Plaintiff's renewed motion.

I. BACKGROUND

The Court presumes the parties' familiarity with this litigation. Briefly, on January 4, 2016, Plaintiff brought this action against U.S. Customs and Border Protection ("CBP"), the U.S. Department of State ("DOS"), the Federal Bureau of Investigation ("FBI"), and U.S. Citizenship and Immigration Services ("USCIS") (collectively, the "government"), seeking a declaratory judgment, injunctive relief, the production of certain documents, and attorneys' fees pursuant to FOIA. (Doc. No. 1.) Plaintiff filed an amended complaint on March 10, 2016. (Doc. No. 29.) Defendants moved for summary judgment on July 14, 2017 (Doc. No. 59), and Spadaro cross-moved for summary judgment on September 15, 2017 (Doc. No. 72).

On March 12, 2018, the Court held oral argument in this case. (*See* Doc. No. 90 ("Tr.").) For the reasons stated on the record, the Court granted in part and denied in part the government's motion for summary judgment and denied Plaintiff's cross-motion for summary judgment without prejudice to renewal on his argument pertaining to Exemption 5. (Tr. 54:18–23.) Specifically, the Court held that the government had conducted an adequate search for records and had properly relied on Exemptions 1, 3, 5, 6, 7(C), and 7(D) to withhold certain documents and to redact others. (*See* Doc. No. 88; Minute Entry for the Proceedings Held on March 12, 2018.) However, the Court denied the government's motion for summary judgment as to the documents withheld pursuant to Exemption 7(E), the exemption for documents pertaining to law enforcement techniques and procedures. (Tr. 54:4–8, 21–22.) The Court did not address the separate issue of segregability at the March 12, 2018 hearing.

At the end of the hearing, the Court directed the parties to file a joint status letter containing proposed next steps in this litigation, which the parties filed on March 26, 2018. (Doc. No. 89.) Notably, Plaintiff challenged certain aspects of the Court's reasoning at the March 12, 2018 oral argument, but did not seek reconsideration of the Court's decisions with which he disagreed. (*Id.*) Instead, Plaintiff made a procedurally improper request to "renew" his cross-motion with respect to several points on which the Court had already granted summary judgment in favor of the government. (*Id.* at 2.) In addition, after the parties submitted their joint letter but before the Court responded, the government filed a "Supplemental Memorandum of Law" (Doc. No. 92) and another "Declaration of David Hardy" (Doc. No. 93 ("Supp. Hardy Decl.")) further justifying its reliance on Exemption 7(E). In those submissions, however, the government did not formally renew its motion for summary judgment. In addition, on May 3,

2018, the Department of Justice made a supplemental release of thirteen pages that had previously been withheld pursuant to Exemption 7(E). (Doc. No. 92 at 1.)

On May 17, 2018, the Court issued an order that (1) construed Plaintiff's portion of the joint letter as a motion for reconsideration of the Court's prior decisions, (2) denied Plaintiff's motion for reconsideration as to one of the Court's holdings premised on the Court's application of Exemption 3 and 8 U.S.C. § 1202(f), (3) permitted Plaintiff to file supplemental briefing on his Exemption 5 arguments, and (4) specifically directed the parties to address the final issue of segregability. (Doc. No. 94.)

On May 31, 2018, Defendants renewed their motion for summary judgment and filed supplemental affidavits further explaining and justifying the government's withholdings pursuant to Exemption 7(E). (Doc. Nos. 95, 96.) Plaintiff opposed the motion and filed an additional affidavit (Doc. Nos. 100, 101), and the government thereafter filed a reply brief and declaration (Doc. Nos. 103, 104). On June 7, 2018, Plaintiff renewed his cross-motion for summary judgment (Doc. Nos. 97, 99) and filed a supplemental declaration (Doc. No. 98), which the government opposed (Doc. No. 102). The motions were fully briefed on July 5, 2018.

II. LEGAL STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is "the procedural vehicle by which most FOIA actions are resolved." *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, No. 07-cv-3378 (GEL), 2007 WL 4233008, at *8 (S.D.N.Y. Nov. 30, 2007). To prevail on a motion for summary judgment in a FOIA action, a responding agency has the burden to show: (1) "that its search was adequate," and (2) "that any withheld documents fall within an exemption to the FOIA." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *see also* 5 U.S.C. § 552(a)(4)(B); *EPA v. Mink*, 410 U.S. 73, 79 (1973);

3

*Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 68 (2d Cir. 2009). "Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden" on a motion for summary judgment. *Carney*, 19 F.3d at 812. Summary judgment is appropriate where the agency affidavits "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner*, 592 F.3d at 73.

### III. THE COURT'S MARCH 12, 2018 ORAL RULINGS

For the reasons stated on the record at the March 12, 2018 hearing, the Court granted in part the government's motion for summary judgment. Briefly, the Court held that (1) Plaintiff waived any challenge to withholdings made by CBP and USCIS (Tr. 5); (2) the government had conducted an adequate search for documents (*id.* 7–10); and (3) the government properly invoked Exemption 1 (*id.* 10–13), Exemption 3 (*id.* 13–26),[1] Exemption 5 (*id.* 26–37), Exemptions 6 and 7(C) (*id.* 37–40), and Exemption 7(D) (*id.* 40–44). However, the Court denied Defendants' motion as to those documents and redactions withheld pursuant to Exemption 7(E) (*id.* 45–54), which exempts from FOIA disclosure information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E). (*Id.* 54:4–7 ("I am basically granting the government's motion with respect to most of the exemptions. I'm not on 7(E).").) As to that

---

[1] The Court's May 17, 2018 Order set forth the Court's decision in greater detail as to the government's reliance on the Immigration and Nationality Act in light of Plaintiff's request that the Court reconsider this portion of the Court's

4

exemption, the Court found that the government had not justified its withholdings with sufficient particularity, rendering impossible the judicial review mandated by FOIA. (*Id.* 53, 54:7–8.)

IV. DISCUSSION

After the Court's March 12, 2018 oral ruling and its May 17, 2018 written order, three issues remain pending in this litigation. First, the government has renewed its motion for summary judgment as to its reliance on Exemption 7(E). Second, the Court permitted Plaintiff to file supplemental briefing on his arguments as to Exemption 5, and he has done so. Third, the Court requested additional briefing as to the issue of segregability, which the parties have submitted.[2] The Court will address each issue in turn.

A. Exemption 7(E)

Consistent with the Court's directive, the government filed supplemental affidavits, as well as a more detailed *Vaughn* Index, to support its reliance on Exemption 7(E) and thereafter renewed its motion for summary judgment as to the final set of documents for which Exemption 7(E) is the only claimed exemption. Before addressing the merits of the government's motion, the Court observes that multiple exemptions can protect a single document in the FOIA context, and the Court need not make redundant findings to justify non-disclosure. *See Pinson v. Dep't of*

---

oral ruling. (*See* Doc. No. 94 at 1–2.)

[2] In his renewed cross-motion for summary judgment, Plaintiff argues for the third time that the Court erred in granting summary judgment to the government with respect to documents withheld pursuant to Exemption 3, which protects records "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), and the Immigration and Nationality Act – a withholding statute which provides that the "records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential," 8 U.S.C. § 1202(f). As an initial matter, Plaintiff's arguments on this point are untimely. A motion for reconsideration must be made "within fourteen (14) days after the entry of the Court's determination of the original motion[.]" Local Rule 6.3. The Court denied Plaintiff's first motion for reconsideration on May 17, 2018 (Doc. No. 94), and therefore Plaintiff's second request for reconsideration is procedurally barred. The Court notes, however, that Plaintiff presents a wholly new theory of interpretation based on the constitutional avoidance canon, which was not presented earlier in the litigation and is therefore waived. *Sys. Mgmt. Arts Inc. v. Avesta Techs. Inc.*, 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000) (no new arguments on motion for reconsideration).

*Justice*, 236 F. Supp. 3d 338, 346 n.4 (D.D.C. 2017); *Appleton v. Food & Drug Admin.*, 451 F. Supp. 2d 129, 141 (D.D.C. 2006) ("[I]f the defendants have withheld information on the basis of multiple exemptions, the court need only rely on one exemption for each piece of exempted material." (citing *Kanter v. Dep't of State*, 479 F. Supp. 921, 928 n.9 (D.D.C. 1979))). In this case, the government relied on Exemption 7(E) for many documents, but after the Court's rulings on March 12, 2018, the relevant universe of documents has shrunk substantially; there remain approximately 40 pages withheld in full or in part based solely on Exemption 7(E). (*See* Doc. No. 93, 104.) Nevertheless, Plaintiff's opposition brief chides the government for supposedly failing to "comply with the Court's order" by not addressing documents which the Court already determined were properly withheld but for which Exemption 7(E) provided an alternative justification. (Doc. No. 100 at 3–4.) Clearly, the government is not obliged to provide additional justifications for withholding a document when the Court has already determined that the document in question was properly withheld under a different exemption. (*See* Doc. No. 93 at 2 n.1 ("This declaration does not address information withheld under Exemption 7(E) in conjunction with another exemption, as the Court has already granted summary judgment with respect to those withholdings.").) But Plaintiff's argument on this point – which demonstrates either a disturbing ignorance of the case law or an equally disturbing level of disingenuity – is just one example of the troubling manner in which Plaintiff's counsel has insisted on litigating this matter.

Turning to the merits of the government's motion, given the significant governmental interests in protecting law enforcement efforts, courts have "set[] a relatively low bar for [an] agency to justify withholding" under Exemption 7(E). *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 42 (D.C. Cir. 2011). Here, the Court is satisfied that the government's

supplemental declarations have adequately justified its reliance on Exemption 7(E). The Supplemental Declarations of David M. Hardy (Doc. No. 93) – containing a supplemental *Vaughn* Index – and Michael G. Seidel (Doc. No. 104 ("Seidel Decl.")) describe each document with particularity. Many of the documents were withheld to protect information related to the investigative focus of a specific investigation, Operation Blackbeard, which was an initiative focused on international organized crime. (*See* Supp. Hardy Decl., Ex. A, entries for, e.g., document numbers 26–27, 297–98, 425–26, 428, 432, 444, 1956, 2520, 2523–24, 2527, 2538, 2540, 2543–44, 2548, 2624; Seidel Decl. ¶ 5–6).) Those documents are clearly exempt under Exemption 7(E). *See Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010). Others pertain to an FBI database, and, according to the affiant, disclosure would reveal information about how the agency internally processes information relevant to its investigations. (Supp. Hardy Decl. Ex. A, entry for document number 2604.) Such documents are likewise clearly exempt under 7(E). *See Bishop v. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 389 (S.D.N.Y. 2014) (collecting cases). The next document relates to the identity and location of an FBI unit (Supp. Hardy Decl. Ex. A, entry for document number 1956), and is therefore properly withheld pursuant to Exemption 7(E), *see Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 29 (D.D.C. 2013). Two more documents were redacted to protect material related to "Intelligence Information Reports" – "a raw intelligence report that is shared within the FBI and throughout the intelligence and law enforcement communities." (Supp. Hardy Decl., Ex. A, entries for document numbers 2604, 2614.) Those, too, were properly redacted, as the Court defers to the affiant's judgment that disclosure would compromise the FBI's counterintelligence efforts. *See Shapiro v. CIA*, 247 F. Supp. 3d 53, 72 (D.D.C. 2017). Finally, one document contains a redaction made to protect sensitive file numbers utilized

internally by the FBI. (Supp. Hardy Decl., Ex. A, entry for document number 214–15.) That redaction was clearly appropriate. *See Shapiro v. Dep't of Justice*, 239 F. Supp. 3d 100, 117 (D.D.C. 2017). Put simply, the government has described each document and amply demonstrated that the withheld and redacted documents are exempt from disclosure under Exemption 7(E).

Against the detailed affidavits of two agency officials, Plaintiff offers nothing but speculation and obfuscation. For example, in the section of his opposition brief that nominally pertains to Exemption 7(E) (*see* Doc. No. 100 at 2–4), Plaintiff again presses his argument that the government improperly relied on Exemption 3 and the Immigration and Nationality Act – an argument that the Court has already twice rejected (*see* Tr. 14–15; Doc. No. 94 at 2–3) and that has nothing to do with Exemption 7(E). He also argues that the government's May 3, 2018 decision to release additional documents should be viewed as evidence that "they were improperly withheld in the first place," and therefore casts doubt on the entire process. (Doc. No. 100 at 7; *see also id.* at 1 ("[T]he DOJ suddenly abandoned numerous Exemption 7(E) withholdings on 15 of those [previously redacted] pages that it previously had claimed in this Court. Under these circumstances, this Court should question all remaining Exemption 7(E) withholdings by the DOJ.").) But "additional document releases, 'accomplished as a result of working with the requester[,]' even during litigation, 'suggest a stronger, rather than a weaker, basis for accepting the integrity of the search.'" *Flores v. Dep't of Justice*, No. 15-cv-2627 (JMA) (RLM), 2016 WL 7856423, at *9 (E.D.N.Y. Oct. 4, 2016) (quoting *Conti v. Dep't of Homeland Sec.*, 12-cv-5827 (AT), 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014)). To round it out, Plaintiff also makes the perfunctory claim that the government's *Vaughn* Index provides only "boilerplate explanations" (Doc. No. 100 at 2), complains that the explanations are "vague

8

and sweeping attempts at justification" (*id.* at 11), argues without citation that the documents are "stale" and therefore non-exempt (*id.* at 10 (citing non-FOIA precedent)), and, finally, insinuates that the documents pertain to illegal conduct on the part of the FBI and therefore cannot be withheld due to the government misconduct exception (*id.* at 11). Again, these efforts reflect the tactics that Plaintiff's counsel has used throughout this litigation; rather than engage directly with the government's detailed affidavits and straightforward legal arguments, Plaintiff's counsel makes broad allegations without citation to apposite authority. And Plaintiff's bald accusation that the government has submitted only "vague and sweeping attempts at justification" is belied by the government's supplemental submissions themselves, which reflect a good-faith effort to comply with the requirements of FOIA. (*Id.* at 11.)

B. Exemption 5

In its May 17, 2018 Order, the Court permitted Plaintiff to renew his motion for summary judgment with respect to the arguments predicated on Exemption 5, which permits agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). A document may be properly withheld only if (1) its source is a government agency, and (2) it falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8. Exemption 5 thus protects documents that would be unavailable to an opposing party through discovery. *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984); *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 481 (2d Cir. 1999) ("Stated simply, agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery

9

rules . . . are protected from disclosure under Exemption 5." (citations and internal quotation marks omitted)); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1185 (D.C. Cir. 1987). Thus, documents that fall within the attorney-client privilege, the attorney work product doctrine, and the deliberative process privilege are exempt from disclosure. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *accord Grand Cent. P'ship, Inc.*, 166 F.3d at 481. At issue here are the deliberative process privilege and attorney work product privilege. The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery." *Klamath*, 532 U.S. at 8–9. The privilege is meant to "enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the [g]overnment." *Id.* at 9 (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151). The deliberative process privilege covers "documents reflecting advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 8. Put succinctly, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006) (citing *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).).

The work product privilege, by contrast, protects "mental processes of [an] attorney," *United States v. Nobles*, 422 U.S. 225, 238 (1975), reflected in documents prepared "in anticipation of litigation," *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998) (citation omitted). More specifically, the privilege protects "'the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways' prepared in anticipation of litigation." *A. Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 146

(2d Cir. 1994) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).

The government invokes Exemption 5 for only a small number of documents. Under the deliberative process privilege, the State Department withheld two pages comprising identical draft letters addressed to Plaintiff's counsel in response to Plaintiff's FOIA request that reflect the DOS official's preliminary thoughts and ideas in responding to the request. (Doc. No. 63, Ex.1 at 1.) Plaintiff does not contest those withholdings. (Tr. 26.) The Department of Justice withheld (1) information from nine pages consisting of email chains containing discussions between FBI agents as to how to respond to a request from foreign law enforcement agencies, (2) a portion of an internal memorandum that contained a proposal as to how to proceed in a criminal investigation (Doc. No. 64 ¶ 80), and, (3) after consulting with ICE, information reflecting an opinion expressed by an employee of ICE's predecessor agency, the Immigration and Naturalization Service, concerning a proposed immigration enforcement action under consideration by the agency (Doc. No. 67 ¶ 11). As for attorney work product, the government asserts that privilege over only four pages, reflecting (1) a portion of an FBI memorandum that "reflects discussions between FBI agents and DOJ attorneys regarding strategy with respect to a criminal investigation and potential prosecution" that contain "the mental impressions and opinions of attorneys with respect to anticipated litigation" (Doc. No. 64 ¶ 83); and (2) a portion of an FBI memorandum that "reflects a conversation between FBI agents and a DOJ attorney from the Office of International Affairs that took place as part of an on-going criminal investigation" (*id.* ¶ 84).

Plaintiff's principal argument is that the Court should invoke an exception to the application of Exemption 5. Plaintiff's position – which has shifted throughout this litigation – is both that the government engaged in misconduct and therefore waived all reliance on Exemption

5 (Doc. No. 73 at 26), and that "the [g]overnment's October 21, 2014 letter from the FBI's Assistant Legal Attaché in the Office of the Legal Attaché ("Legat") in Nassau, Bahamas to the Royal Anguilla Police Force (the "Anguilla Letter") represents a waiver of all subject matters discussed in that public communication." (Doc. No. 99 at 5–6).

At oral argument, the Court expressed its skepticism as to Plaintiff's first argument based on the so-called "misconduct exception." (Tr. 36:20–23 ("I [am not] persuaded that even if there is [a misconduct] exception . . . to Exemption 5, that what's been alleged here demonstrates the kind of extreme or nefarious activity that would trigger that exception . . .").). Perhaps not surprisingly, Plaintiff ultimately retreated from that theory at oral argument and instead shifted his focus to waiver. (Tr. 33.) In any event, the Court concludes that Plaintiff has not made the requisite showing of government misconduct to justify such an exception. *See Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Housing & Urban Dev.*, 19 F. Supp. 3d 1, 13 (D.D.C. 2013); *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 903 F. Supp. 2d 59, 66, 68–69 (D.D.C. 2012).

Plaintiff's waiver theory is no more persuasive. As discussed, Plaintiff's position is that by sending a letter to the Anguilla Police Force, the government waived its ability to invoke the deliberative process privilege and the work product doctrine, and that this "waiver extends to the entire subject matter of all relevant issues addressed by the Anguilla Letter." (Doc. No. 99 at 6.) Plaintiff is wrong on both counts. To begin, "there is no subject-matter waiver associated with the deliberative process privilege." *Ford Motor Co. v. United States*, 94 Fed. Cl. 211, 218 (2010); *see also In re Sealed Case*, 121 F.3d 729, 742 (D.C. Cir. 1997) ("[Subject matter waiver] has not been adopted with regard to executive privileges generally, or to the deliberative process privilege in particular. Instead, courts have said that release of a document only waives these

privileges for the document or information specifically released, and not for related materials."); *United States v. Wells Fargo Bank, N.A.*, No 12-cv-7527 (JMF), 2015 WL 6395917, at *1 (S.D.N.Y. Oct. 22, 2015) ("[C]ourts have overwhelmingly (if not uniformly) held that 'the release of a document only waives the *deliberative process* privilege for the document that is specifically released, *and not* for related materials.'" (internal quotation marks and citation omitted)). Indeed, as the government points out, a broad subject-matter waiver doctrine akin to that of attorney-client privilege would defeat the entire purpose of the deliberative process privilege; government actors must be able to discuss a subject in a "predecisional" and "deliberative" manner without fear that disclosure of their final decision will waive privilege as to all precursor communications.

As for the work product doctrine, the government invokes that privilege only for a portion of two FBI memoranda (totaling four pages) that contain discussions between FBI agents and DOJ attorneys regarding prosecution strategy in an ongoing criminal investigation. (Doc. No. 64 ¶ 83, 84.) Those documents, which contain "reports and recommended action with respect to the status of an investigation submitted before any final decision is made as to the course of [an] investigation" are obviously "prepared in anticipation of litigation" and entitled to work product protection. *A. Michael's Piano*, 18 F.3d at 146–47. Nevertheless, Plaintiff speculates that those discussions must have addressed topics contained in the Anguilla Letter, and that the government has therefore waived its privilege. (Doc. No. 99 at 11.) Although the waiver doctrine in the context of the work product privilege may be broader than in the context of the deliberative process privilege, *see In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) (noting that "work-product waiver . . . extends to 'factual' or 'non-opinion' work product concerning the same subject matter as the disclosed work product"), that waiver doctrine is not as

broad as the subject-matter waiver theory on which Plaintiff relies. Accordingly, Plaintiff's challenge to the government's invocation of the work product doctrine also fails.

At bottom, Plaintiff's legal arguments as to Exemption 5 and, specifically, waiver of the deliberative process and work product privileges, conflate the various privileges and their associated waiver doctrines. In addition, as the Court already observed at the March 12, 2018 oral argument, Plaintiff's assertion that the government is using the privilege as "both a sword and a shield" is not accurate. (*See* Tr. 29.) The government has not attempted to use documents against Plaintiff in litigation and then to hide behind a claim of privilege in that same litigation; indeed, Plaintiff has made no showing that the government has used the privileged documents here against him in any capacity. In sum, Plaintiff's waiver argument is not supported by the case law, and his rhetorical arguments are equally unavailing.

C. Segregability

Turning to the final issue of segregability, under FOIA, any "reasonably segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions," *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). By contrast, "information that is 'inextricably intertwined' with exempt information cannot be disclosed." *Inner City Press/Cmty. on the Move v. Bd. of Governors of the Fed. Reserve Sys.*, 463 F.3d 239, 249 n.10 (2d Cir. 2006) (citation omitted). "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Id.* at 1117.

Here, the affiants have each stated that they reviewed the documents withheld by their respective agencies and concluded that all reasonably segregable information has been disclosed. (Doc. Nos. 61 ¶ 20; 62 ¶ 32; 63 ¶ 40; 64 ¶ 132; 93 ¶ 6.) Courts often rely on affirmances like these – which are entitled to a presumption of good faith absent a showing to the contrary – in FOIA litigation. *See, e.g., Am. Civil Liberties Union v. Dep't of Justice*, 210 F. Supp. 3d 467, 483 (S.D.N.Y. 2016); *Sussman*, 494 F.3d at 1117 (observing that "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the plaintiff). Furthermore, as the government points out, these affidavits are buttressed by the nature of the documents and the claimed exemptions themselves. (*See* Doc. No. 96 at 3–4.) For example, many of the documents were withheld in full because they were sealed pursuant to a court order or are grand jury-related documents, and therefore there is no portion of segregable information contained therein. (*Id.* at 3.) Accordingly, the Court finds that the government has adequately demonstrated that no additional, segregable information remains to be disclosed.

V. CONCLUSION

For the reasons state above, the government's renewed motion for summary judgment is GRANTED, and Plaintiff's renewed motion for summary judgment is DENIED. The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 95 and 97 and to close this case.

SO ORDERED.

Dated: March 26, 2019
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation